**APPENDIX 2**

## AGREEMENT

THIS AGREEMENT, effective as of the 7 day of June, 1995, is by and between Bart Enterprises International, Ltd., an International Business Company organized and existing under the laws of the Commonwealth of the Bahamas (hereinafter referred to as "Bart") and Walter Mercado, an individual residing at San Juan, Puerto Rico (hereinafter referred to as "Mercado." )

### WITNESSETH

WHEREAS, Mercado is a well-known psychic and astrologer who provides psychic and astrological counseling to the public; and

WHEREAS, Bart is in the business of producing and distributing entertainment programming, including but not limited to audiovisual, print and audiotext material; and

WHEREAS, Bart has made provisions to obtain ownership rights to previously produced entertainment programming featuring Mercado performing and promoting his psychic and astrological services; and

WHEREAS, Bart and Mercado desire to confirm Bart's ownership rights in and to the results and proceeds of Mercado's past services, and in and to the common law trademark/service mark "Walter Mercado" in connection with, the Preexisting Materials as more fully defined below; and

WHEREAS, Bart desires to produce and distribute Additional Materials, as more duly defined hereunder, featuring and promoting Mercado's psychic and astrological abilities; and

WHEREAS, Mercado desires to grant the right to produce and distribute Additional Materials, and the right to use Mercado's name and "likeness and to own Mercado's common law trademark/service mark "Walter Mercado" in connection therewith:

NOW, THEREFORE, in consideration of Ten ($10.00) Dollars, receipt of which is hereby acknowledged, and other valuable consideration including the mutual promises hereinafter set forth, the parties hereto agree as follows:

1. <u>Grant of Rights.</u>

   (a) <u>Preexisting Materials.</u>

   Mercado hereby irrevocably assigns to Bart throughout the Territory during the Term, all right, title and interest, including all copyrights in and to all Preexisting Materials as hereinafter defined, which Mercado heretofore created or originated for Jamie Shoop & Associates Inc., ("Shoop"), and all prior results thereof, in connection with Mercado's astrological and psychic activities, including but not limited to those materials listed on Schedule A attached hereto and made a part hereof ("Preexisting Materials"). Such assignment includes but is not limited to the right to exploit and distribute the Preexisting Materials in any language and in any and all media now known or hereafter developed, including but not limited to theatrical; non-theatrical; television, including but not limited to free, satellite, pay-per-view and cable transmission; home videotape, videodisc and other home video or audio/visual devices; print, including but not limited to books, newspapers, magazines and reprints thereof, direct mail, and point of purchase; electronic publishing; CD-ROMs and the "Internet," the right to merchandises and the right to utilize the Preexisting Materials in all advertising, promotion and publicity created in connection therewith. If the assignment contained in this provision is inconsistent with any previous contract between the parties, this instant Agreement will govern and control.

   (b) <u>New Materials.</u>

   Mercado hereby grants to Bart the exclusive right and license during the Term and throughout the Territory to develop, produce, distribute and copyright in its own name new materials, in any language, relating to Mercado's psychic and astrological services of whatever

nature whatsoever, including but not limited to print, audiotext, audiovisual and radio programming, computer software, merchandise and advertising and promotion in connection therewith ("New Materials"), throughout the Territory by any and all means and in any and all media now known or hereinafter devised, including but not limited to theatrical; non-theatrical; television, including but not limited to free, satellite, pay-per-view and cable transmission; home videotape, videodisc and other home video or audio/visual devices; print, including but not limited to books, newspapers, magazines and reprints thereof, direct mail, and point of purchase; electronic publishing; CD-ROMs and the "Internet."

2.      <u>"Walter Mercado" Mark.</u>

(a)     The parties acknowledge that the mark "Walter Mercado" has been used and associated with the Preexisting Materials (the "Mark"). As a result, the Mark has attained the status of a common law trademark and service mark.

(b) Mercado hereby irrevocably assigns to Bart throughout the Territory during the Term, all right, title and interest in and to the Mark, together with that part of the goodwill of Mercado's business connected with and symbolized by said Mark, for use in connection with the Pre-existing Materials and the New Materials, if any. Such assignment includes but is not limited to the right to use the Mark in connection with Preexisting Materials and the New Materials in any and all media now known or hereafter developed, including but not limited to theatrical; non-theatrical; television, including but not limited to free, satellite, pay-per-view and cable transmission; home videotape, videodisc and other home video or audio/visual devices; print, including but not limited to newspapers, magazines and reprints thereof, direct mail, and point of purchase; electronic publishing; and CD-ROMs and the "Internet", the right to merchandise and the right to utilize the Mark in all advertising, promotion and publicity created in connection therewith.

(c)     Without limiting the breadth of the rights granted in this paragraph, Bart shall have all rights in the Mark which are afforded to owners of trademarks and service marks, including but not limited to the right to seek and obtain trademark protection and/or registration of the Mark in its name, and the right to enforce or defend Bart's rights against third parties. Mercado shall cooperate fully with Bart in Bart's exercise of any of the rights granted hereunder.

3.   Name and Likeness.

(a)     The parties acknowledge that Mercado's Name and Likeness (as defined below) has been used in connection with the production and exploitation of the Preexisting Materials, and Bart intends to use Mercado's Name and Likeness in connection with the New Materials.

(b)     Mercado hereby grants to Bart the right and license during the Term and throughout the Territory to use Mercado's performance, name, signature, photographs, voice, picture, likeness, or other indicia of his identity (collectively "Name and Likeness") in connection with the Preexisting Materials and the New Materials by any means and in any and all media now known or hereafter devised, subject, however, to Mercado's right to prior approve any such use, such approval not to be unreasonably withheld. If such approval is not communicated to Bart within forty-eight (48) hours of Mercado's receipt of the materials, such right of approval shall be deemed waived.

4.   Territory

The territory shall be the universe (the "Territory").

5.   Term

The term of this Agreement shall be in perpetuity (the "Term"), subject to the provisions of paragraph 12 hereinafter.

6.   Mercado's Services.

(a)     Prior Agreements.

4

The parties acknowledge that certain agreements and more specifically that Agreement, dated July 26, 1994, heretofore entered into between Mercado and Shoop, and which is currently in full force and effect, relating to astrological and psychic services Mercado shall provide to Shoop in connection with the creation of Preexisting and New Materials (collectively referred to as "Prior Services Agreements") are hereby deemed, upon execution of this agreement, canceled and terminated by Mercado and Shoop, and therefore null and void and of no further force and effect. An acknowledgment and agreement of Mercado and Shoop that the said Prior Services Agreements are hereby terminated, as aforesaid, is evidenced by execution of this Agreement as hereinafter provided by their respective signatures on this Agreement. It is further understood that Shoop has retained no interest, of any nature whatsoever, in this Agreement and that Shoop has divested itself of any rights in the Preexisting Materials, aforesaid. It is agreed, however, that with respect to any compensation which may be due to Mercado pursuant to the said July 26, 1994 Agreement I shall be paid up to the date of termination thereof.

(b) <u>Additional Services Agreements</u>

(i) Mercado agrees to provide additional psychic and astrological services to Bart in connection with the creation of the New Materials during the Additional Services Period, as defined hereunder. Such Additional Services shall include but not be limited to creating audiotext recordings for pay per call services, appearing in long form commercials ("Infomercials"), creating print, radio and television advertising and making personal appearances. The dates on which such services shall be rendered shall be mutually agreed to by the parties.

(ii) Mercado shall provide Additional Services for a period of ten (10) years from the date hereof (the "Additional Services Period"). The Additional Services Period shall be automatically extended for additional two (2) year periods at the option of Bart, unless

5

Bart notifies Mercado otherwise no less than thirty (30) days prior to the expiration of the then current Additional Services Period.

   (iii) The parties agree that any and all New Materials or parts thereof created or supplied by Mercado shall be deemed works made for hire as such term is defined pursuant to the United states Copyright Law, International Copyright Law, or relevant jurisdiction copyright law, whichever the case may be, as amended from time to time. In the event that any of the results of Mercado's services are not copyrightable subject matter, or for any reason are deemed not to be works made for hire, then and in such event, by execution of this agreement, Mercado hereby assigns all right, title and interest in and to the results of his services to Bart and agrees to execute all further documents required to evidence such assignment.

 (c) <u>Compensation.</u>

Bart agrees to pay to Mercado, in consideration of all services rendered by Mercado and the use of the results thereof and all rights granted by Mercado to Bart, the following compensation:

   (i) A fee of Twelve Thousand Five Hundred ($12,500) Dollars per month for each the continental United states and for Puerto Rico (collectively the "United States/Puerto Rico") for an aggregate total of Twenty-five Thousand ($25,000) Dollars a month;

   (ii) Five Thousand ($5,000) Dollars per month for costumes;

   (iii) A total of Two Thousand ($2,000) Dollars for up to 25 three minute segments per month; and

   (iv) An additional fee of up to an additional Twenty-five Thousand ($25,000) Dollars per month for each additional country (other than the United states/Puerto Rico), in which gross income earned by Bart from such other country is at least equal to the gross income

earned by Bart from the United States in that month, so long as the gross earned by Bart from the United States is a minimum of Two Million $2,000,000) Dollars. In the event the gross income earned by Bart from the activities conducted as above described in any country outside of the United States/Puerto Rico is less than that gross income earned in the United states for the period, Mercado's compensation for such country shall be paid on a pro-rata basis. All payments to Mercado hereunder shall be due on or before the 15th day of the month following the month in which such gross revenues are earned.

      (v)    Further, in addition to the foregoing, Mercado and Bart contemplate additional compensation for services and use of Mercado's name and likeness in connection with non-psychic related activities. With respect to all necessary services which will be rendered by Walter in connection therewith, Walter shall be entitled to compensation therefor, of one-third (1/3) of the gross revenues generated therefrom. It is understood, however, that Walter shall be in no way hereunder prohibited or restricted, for his personal benefit, from conducting his present business endeavors consisting of radio, newspaper, magazines and personal consultation related to psychic activities.

7.    <u>No Obligation.</u>

Nothing contained in this Agreement shall be construed to obligate in any way Bart to produce and/or distribute Preexisting Materials or New Materials. Bart shall determine in its sole and absolute discretion whether or not to exploit the rights granted hereunder.

8.    <u>Reversion.</u>

Notwithstanding anything contained herein to the contrary, in the event Bart ceases to exploit all of the Preexisting Materials or New Materials, if any, for a period of twelve (12) months or longer, the rights granted in paragraph 2 and 3 hereunder shall automatically revert back to Mercado.

9. <u>Representations and Warranties.</u>

   (a) Mercado represents and warrants that:

      (i) He has the full right to enter into and fully perform this Agreement in accordance with its terms.

      (ii) All Preexisting or New Materials or parts thereof created or supplied by Mercado are or shall be original to him.

      (iii) The execution, delivery and performance of this Agreement and any Preexisting or New Materials created or supplied by Mercado shall not infringe upon the rights, including but not limited to, the rights of privacy or publicity and copyright or trademark or any other personal rights of any third party of violate the provisions of any agreement to which Mercado is a party.

      (iv) Throughout the Term hereof Mercado shall not, other than on behalf of Bart, directly or indirectly, participate in or authorize or permit his name, signature, photograph, voice, picture, likeness, or other indicia of his identity to be exploited in any manner, in connection with any commercial, advertisement, promotion, merchandising, publicity, endorsement, or other commercial exploitation, for any product, service, company, individual or entity whatsoever that may compete with any of the Preexisting of New Materials.

      (v) Throughout the Term hereof Mercado shall not, other than on behalf of Bart, directly or indirectly, participate in or authorize or permit the Mark to be exploited in any manner, in connection with any commercial, advertisement, promotion, merchandising, publicity, endorsement, or other

      commercial exploitation, for any product, service, company, individual or entity whatsoever that may compete with any of the Preexisting or New Materials.

  (vi) None of the Preexisting Materials or New Materials or parts thereof are or shall be in the public domain.

    (b) Bart represents and warrants that:

      (i) Bart has the full right to enter into and fully perform this Agreement in accordance with its terms.

      (ii) All Materials and any parts thereof created or supplied by Bart shall be original to it.

      (iii) The execution, delivery and performance of this Agreement and the Materials supplied by Bart shall not infringe upon the rights, including but not limited to, the rights of privacy or publicity, and copyright or trademark or any other personal rights of any third party or violate the provisions of any agreement to which it is a party.

10. <u>Indemnification</u>.

  (a) The parties shall defend, indemnify and hold harmless each other from third parties against any and all claims, actions, liabilities, costs and expenses, including court costs and reasonable attorneys fees resulting from the breach by either party of any of their respective warranties, representations or agreements made herein.

  (b) The party claiming right of indemnification ("Indemnitee") shall promptly notify the party from which indemnification is sought ("Indemnitor"), of any claim against the Indemnitee which might give rise to a claim against the Indemnitor under this Agreement, stating

9

the nature and basis of the claim and, if known, the amount thereof. If a legal action or proceeding is brought against the Indemnitee with respect to which the Indemnitor may have liability under this Agreement, Indemnitor shall have the right, without prejudice, to the Indemnitee's rights under this Agreement, at the sole expense of the Indemnitor, to be represented by counsel of Indemnitor's own choosing (with whom counsel for the Indemnitee shall confer in connection with the defense of any such action or proceeding) and, to the extent that it shall wish, to assume the defense thereof with counsel approved by the Indemnitee, which approval will not be unreasonably withheld. After notice from the Indemnitor to the Indemnitee of the Indemnitor's election to assume the defense, the Indemnitor shall not be liable to the Irtdemnitee for any fees of other counselor any other expenses incurred by the Indemnitee, except where such expenses are incurred at the request of the Indemnitor in connection with the defense of any action or proceeding. The Indemnitee shall make available to the Indemnitor and Indemnitor's counsel all materials relating to such action

or proceeding and the parties shall cooperate with each other in defending against such action. The Indemnitee shall not make any settlement of any claims which might give rise to liability of the Indemnitor without the Indemnitor's prior wr~tten consent, which consent shall not be unreasonably withheld:

11.  Affirmative Covenants.

(a)  Mercado and Bart each agree that at no time, during the Term hereof, shall either party disparage the other or any of its products, services, business associates, directors, officers, employees or representatives or his association with them.

(b)  If at any time during the Term any third party uses or threatens to use, in any manner, Mercado's name, signature, photograph, voice, picture, likeness, or other indicia of his identity or the name, signature, photograph, voice, picture, likeness, or other indicia of identity of

a party other than Mercado in a manner which is likely to be confused with or taken to be that of Mercado and such use would, if it had been authorized by Mercado, constitute a violation of this paragraph, then at Bart's request, Mercado shall take such steps as Bart reasonably requests to cooperate with any legal action deemed necessary by Bart.

12. <u>Termination</u>.

    (a) <u>Right to Terminate</u>.

    (i) Bart shall have the right to terminate this Agreement immediately (A) in the event of a material breach by Mercado which remains uncured for a period of ten (10) days following written notice thereof; (B) if judicial proceedings are filed or institute against Mercado, which Bart reasonably believes may impact upon the reputation or integrity of Mercado, or have an impact upon Mercado's ability to perform its duties hereunder.

    (ii) Mercado shall have the right to terminate this Agreement immediately (A) in the event of a material breach by Bart wh5.ch remains uncured for a period of ten (10) days following written notice thereof; (B) if judicial proceedings are filed or instituted against Bart, which Mercado reasonably believes may impact upon the reputation or integrity of Bart, or have an impact upon Bart's ability to perform its duties hereunder.

    (iii) Notwithstanding anything herein to the contrary, if Bart fails to make any of the above mentioned payments, in paragraph 6(c), within sixty (60) days from the due date, then Mercado shall have the option to declare this contract null and void and all payments already made on the part of Bart shall be retained by Mercado, provided Mercado gives Bart; written notice at least fifteen (15) days prior to such date of termination and Bart fails to cure the non-payment within such time period or otherwise can justify its failure to make any such payments.

11

(b) <u>Effect of Termination</u>.

(i) In the event this Agreement is terminated, Bart shall have the right to sell-off any and all remaining Preexisting and New Materials for a period of six (6) months after the termination date, subject, however, to making the payments set forth in the respective underlying agreements for the remaining Preexisting and New Materials.

(ii) In the event this Agreement is terminated by either party for reasons other than non-payment of compensation to Walter as a material breach by Bart, and Mercado provides similar activities, employment, engagements and services in connection with his psychic and astrological services, Bart shall be entitled to receive ten (10%) percent of all gross Monies and other Consideration, as such term is defined hereunder for three (3) years following termination of this Agreement. Gross Monies and other Consideration shall mean any and all sums received by or credited to the account of Mercado resulting from the use of Mercado's psychic and astrological services and the results and proceeds thereof after termination of this Agreement including but not limited to, salaries, earnings, fees, royalties, residuals, repeat and rerun fees, gifts, bonuses, shares of profit, shares of stock, partnership interests, forgiveness of indebtedness, percentages and the total amount paid for any package, television or radio program, motion picture, print or other entertainment packages and any of which are earned or received directly or indirectly by Mercado or Mercado's heirs, executors, administrators or assigns, or by any other person, firm or corporation on Mercado's behalf.  If any corporation, partnership, trust, joint venture or other business entity in which Mercado has a direct or indirect interest shall receive any compensation for permitting or contracting for the use of Mercado's services, name, likeness or endorsement, then such compensation shall be deemed "Gross Monies" for the purposes of this agreement.

(iii)     Mercado shall maintain accurate books and records relating to Gross Monies and other Consideration, if any, for so long as Gross Monies and other Consideration continues to be earned. Mercado shall furnish Bart on a monthly basis with detailed accounting setting forth all Gross Monies and Other Consideration received or credited to the account of Mercado during the previous month accompanied by payment of any and all monies due to Bart. Bart and/or Bart's representative shall have the right upon reasonable request, during regular business hours, to inspect and make copies of such books and records. In the event of a disparity in Mercado's favor of more than five (5%) percent, Mercado shall be responsible for paying Bart's actual costs and expenses associated with the audit and immediately remitting to Bart all monies due.

(iv)     Notwithstanding the foregoing, if Mercado enters into agreements with any third parties in connection with the exploitation of his psychic and/or astrological services, Mercado shall direct all such third parties to pay and account directly to Bart on the same basis as it pays and accounts to Mercado.

13.     <u>Remedies</u>.

Subject to the terms of this agreement, all grants granted or assigned by this agreement shall be irrevocable under all or any circumstances, and shall not be subject to rescission, termination or injunction. In the case of breach of this agreement by Bart, Mercado's sole remedy shall be limited to an action at law for damages. Neither party shall be liable for damages for breach of this Agreement unless the party in breach has been given reasonable notice and opportunity to adjust or correct the matter complained of, provided such breach is capable of being adjusted or corrected.

14. <u>Notices</u>.

All notices to the parties hereby shall be deemed to have been duly I given when sent by registered mail, return receipt requested, or cablegram j or telex duly acknowledged, to such parties at the addresses herein below indicated for their principal office:

If to Bart:

    Bart Enterprises International, Ltd.

    c/o Lennox Paton Chambers

    Claughton House

    Charlotte Street

    Nassau, Bahamas

If to Mercado:

    Walter Mercado

    c/ Jose Delgado Cadilla

    Castro, Delgado, Cadilla & Ramos

    Chase Building (Housing)

    416 Ponce de Leon Avenue

    Suite 615

    San Juan, Puerto Rico 00918

or to such other address as the party to whom notice is to be given may i have furnished to the other party in writing in accordance herewith.

15. <u>Services Unique</u>.

The services to be performed by Mercado and the rights granted hereunder are special, unique, extraordinary and impossible of replacement, giving them a particular value, the loss of which cannot reasonably or adequately be compensated in damages in an action at law and that

Mercado's failure or refusal to perform his obligations hereunder would cause irreparable harm or damage. Therefore, should Mercado fail or refuse to perform such obligations, Bart shall be entitled in addition to any of its other rights and remedies Bart may have, to seek injunctive or other equitable relief.

16.     Hiring and Employment of Psychics.

The hiring of psychics who will answer calls shall be carried out by Bart, which will seek and follow Mercado's advice in the selection and screening of credentials and abilities of such psychics. While Bart has discretion in the hiring and employment of said psychics, Bart shall not hire or keep under contract or employment any psychic whom Mercado deems unfit or unacceptable for the purposes described in this Agreement.

17.     Inspection of Accounting Books.

Mercado may appoint a certified public accountant to examine the books and records of Bart, but solely with reference to the subject matters of this Agreement. Such examination may be made during normal business hours upon twenty (20) days written notice prior to Bart, but there shall be not more than one such examination during any calendar year.

18.     Professional Rendition of Services.

Mercado will attend and participate in all rehearsals, filming or taping and photography sessions required and will render his services hereunder in accordance with the scripts or other materials Bart shall furnish to Mercado for such purposes. Mercado agrees to render Bart's services in a competent and artistic manner to the best of his ability, and that all Mercado's services will be subject to Bart's approval, direction and reasonable control at all times. Mercado will promptly comply with whatever reasonable instructions, suggestions, and recommendations Bart may give Mercado in connection with the rendition of such services. Notwithstanding the

foregoing, nothing contained in this paragraph shall be deemed to diminish Mercado rights of approval as otherwise provided in this Agreement.

19.     Life Insurance.

Mercado agrees that Bart may obtain, in its discretion and at its sole cost and expense, a life insurance policy on the life of Mercado in any amount up to and including Five Million ($5,000,000) Dollars which names Bart or anyone appointed by Bart as beneficiary. Mercado agrees to execute any and all documents reasonably requested by Bart to give effect to this provision.

20.     Miscellaneous.

(a)     Any waiver by Bart or Mercado of a breach of any term or condition of this Agreement shall not be considered as a waiver of any subsequent breach of the same or any other condition hereof.

(b)     If any provision of this Agreement is declared void or unenforceable by any judicial or administrative authority, this shall not in and of itself nullify the remaining provisions of this Agreement.

(c)     This Agreement shall not be deemed to constitute the parties a partnership, joint venture, association or any type of combination. This Agreement shall also not be deemed to constitute any party the agent of the other, or to authorize any party to incur any obligations on behalf of any other or to make on behalf of the other party any promises, warranties or representations.

(d)     This Agreement shall be deemed to have been made in Puerto Rico, and shall be governed by and construed in accordance with the laws of Puerto Rico and the parties hereto submit to the jurisdiction of the courts of Puerto Rico.

(e) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns, parents, subsidiaries or otherwise related or affiliated company(ies). Notwithstanding the foregoing, this Agreement shall not be assignable by Mercado without the prior written consent of Bart. Bart has the full and unrestricted right to assign this Agreement, provided Guillermo Bakula shall thereafter remain and act in a consultant or advisory capacity of Executive Producer hereunder.

(f) The paragraph headings of this Agreement are for convenience only and shall not be deemed to affect in any way the meaning of the provisions to which they refer.

(g) This Agreement represents the entire agreement of the parties, and all prior assertions, understandings, warranties and representations are merged herein. It is a final integrated agreement which includes all the terms, conditions, and representations between the parties, and the parties make no warranty, covenants or agreements, express or implied, except those expressly set forth herein. This Agreement may be modified or amended only by a writing signed by all parties to this Agreement.

(h) This agreement may be executed in counterparts, each of which shall constitute an original.

(i) The effective date of this Agreement shall be June 7, 1995.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in by their duly authorized officers effective as of the day and year first above written.

WITNESSES:                                BART ENTERPRISES INTERNATIONAL , LTD.

_____

_____       By: _____
                                                Guillermo Bakula, President
                                                Dated: August 4, 1995

_____

_____       _____
                                                Walter Mercado
                                                Dated: August 4, 1995