IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WALTER MERCADO-SALINAS, et al.,

Plaintiffs,

v.

BART ENTERPRISES INTERNATIONAL,
LTD., et al.,

Defendants.

CIVIL NO.: 07-1113 (FAB/MEL)

**OPINION AND ORDER**

Before the Court is Bart Enterprises International, Ltd.'s ("Bart"), Walter International Productions, Inc.'s, Watervision, Inc.'s, Waltervision Productions, Inc.'s, Walter Mercado Radio Productions, Inc.'s, Walter Mercado Enterprises Corp.'s, Guillermo Bakula's, Maritza Barton's, Maritza Carvajal's and Ramón del Valle's (the last three without submitting to the Court's jurisdiction) (collectively, "defendants") memorandum in support of attorney's fees and costs related to Walter Mercado-Salinas' ("Mercado Salinas") and Astromundo, Inc.'s (collectively, "plaintinffs") request for a preliminary injunction. Docket No. 101. For the following reasons, the court grants the request for attorney's fees, but reduces the amount requested.

I.    **PROCEDURAL BACKGROUND.**

Plaintiffs filed the complaint in this case on February 8, 2007. Docket No. 1.[1]   That same

---

[1] According to the complaint, this is an action for "damages, declaratory and injunctive relief brought under applicable federal, common federal and state law, to prevent and enjoin [d]efendants from illegally continue using, abusing, damaging and profiting from [p]laintiffs' artistic work, name, voice, image, likeness, productions, common law trademark or service marks, intellectual property, copyright and/or author rights." Docket No. 1, § I.  The claims raised in the complaint arise from an Agreement entered by and between Mercado-Salinas and Bart on August 4, 1995, by which Bart would produce and distribute entertainment programming featuring and promoting Mercado-Salinas' artistic abilities as a psychic and astrologer.  Docket No. 1, Exhibit 2.  Through the complaint, plaintiffs request that the Agreement be declared null, void and/or lawfully terminated because it allegedly infringes, illegally and unreasonably, plaintiffs' copyrights, trademark and legal rights.  Plaintiffs also seek to recover and collect from defendants money owed

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 2

date, defendants also filed a Motion for Temporary Restraining Order ("TRO") and a Motion for

Preliminary Injunction.  Docket Nos. 2-4.[2]

On February 9, 2007, U.S. District Judge Francisco A. Besosa denied the TRO and referred

the Motion for Preliminary Injunction to the undersigned for a hearing.  Docket No. 5.  In denying

the TRO, the court stated that it could not find, at that time, that plaintiffs were "likely to succeed

on the merits of their claim" and that plaintiffs had not "persuaded the court that the contract suffers

from any condition which may render it null and void."  Id.  The court further stated the following:

> The contract at issue here provides that in the event of its termination, the defendant
> would retain the right to continue selling plaintiffs' materials for a period of six (6)
> months after the termination date. (Docket No. 1, Appx. 2, p. 12). Because plaintiffs'
> allege to have terminated the contract on November 22, 2006, the six-month period
> has not yet elapsed and some of plaintiffs' claims may be premature.

Docket No. 5, page 1 (emphasis added).  The court also ordered plaintiffs to serve all defendants

with summons, copies of all their filings, and a copy of the order denying the TRO by no later than

Friday, February 23, 2007.  Id. On February 14, 2007, the preliminary injunction hearing was

scheduled for March 20, 2007.  Docket No. 8.  On February 16, 2007, plaintiffs requested

reconsideration of the denial of the TRO, which the court eventually denied as well on April 10,

---

and unduly denied by defendants under said agreement or otherwise, as well as real and treble damages and/or loss of profits –past and present– compensatory damages, statutory damages, attorneys fees and costs. Docket No. 1.

[2] The TRO and the Preliminary Injunction were aimed at enjoining, preventing, restraining and making defendants desist from, among others: (1) representing plaintiffs or making business on behalf of plaintiffs, for artistic, entertainment, commercial or any other purpose, in the media; (2) using, distributing, abusing, damaging and profiting from Mercado-Salinas' artistic work; (3) charging and collecting money, earnings, profits, revenues, etc., from Mercado Salinas' appearances in the media; (4)altering, tampering and/or reproducing, via internet, radio, telephone, fax or any other media, altered horoscopes, altered zodiac readings and/or altered voice and/or altered video recordings, of Mercado Salinas; (4) recording and/or reproducing Mercado Salinas' voice, image, likeness, publications or programs; causing dilution, deceiving and/or creating likeness of mistake or confusion, among the public, as to plaintiff's alleged inexistent association, affiliation, approval or connection with defendants' materials, products, programs, or productions; and (5) interfering and/or threatening to interfere with plaintiffs' contractual obligations or business relations with lawful and recognized suppliers, agents and/or associated businesses of plaintiffs.  See Docket Nos. 2-4.

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 3

2007.  Docket Nos. 9, 58.

As the docket of this case reflects, during the following weeks the parties engaged in active litigation in preparation for the preliminary injunction hearing, requiring the court's constant attention.  On February 23, 2007, the last day to serve defendants with summons, plaintiffs filed a Motion Requesting Extension of Time to Serve Process Upon Defendants.  Docket No. 10.  On February 27, 2007, the Court granted plaintiffs' motion and gave plaintiffs until March 5, 2007, to serve defendants.  Docket No. 11.  On March 5, 2007, plaintiffs once again filed a Motion Requesting Additional Extension of Time to Serve Process Upon Defendants, seeking an additional ten days, until March 15, 2007, to serve process on defendants. Docket No. 14.  The court granted that request on March 13, 2007.  Docket No. 15.

On March 14, 2007, defendants moved the court to postpone the preliminary injunction hearing that was going to take place six days later because as of that date, defendants had not been served with summons yet. Docket Nos. 16-17.  That same date, the Court granted the request for continuance of the preliminary injunction hearing and ordered plaintiffs to serve process on defendants on or before March 30, 2007.  Docket No. 18.  On March 21, 2007, the court rescheduled the preliminary injunction hearing for April 19, 2007.  Docket No. 23.  By March 30, 2007, defendants had been served with summonses.  Docket No. 32.

On March 28, 2007, defendants filed a Motion for Expedited Discovery requesting leave to take the depositions *duces tecum* of Mercado Salinas before the preliminary injunction hearing scheduled for April 19, 2007.  They also requested leave to take the depositions *duces tecum* of Aida Mercado, Henry Mercado, Wilfredo Acosta, Ivonne Caicedo and Angel Acosta, who allegedly are plaintiffs' agents, principals and/or employees, before said date.  Docket No. 28.  Defendants' main

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 4

argument to support their request was that, due to the short time to prepare for the preliminary injunction hearing, they needed to conduct the requested discovery on an expedited basis in order to attain relevant documents from said witnesses.[3]

On April 2, 2007, plaintiffs filed a Response to Defendants' Motion for Expedited Discovery. Docket No. 38. Plaintiffs alleged that defendants' request for discovery was unreasonable and that its only purpose was to harass, burden and intimidate plaintiffs. Plaintiffs also asserted that, in any event, they would be the ones entitled to limited expedited discovery because they had the burden of proof in a preliminary injunction hearing. Id. Plaintiffs, however, stated that they were "willing and ready to commence the discovery process but only within the timing provided by the Federal Rules of Civil Procedure." Id.

On April 3, 2007, defendants replied to plaintiffs' response to the Motion for Expedited Discovery. Docket No. 41. The next day, April 4, 2007, the court denied defendant's request for expedited discovery. In doing so, the court noted that under certain circumstances, such as cases involving requests for preliminary injunction, expedited discovery can be appropriate. Notwithstanding, the court denied the expedited discovery request because after reviewing the list of the documents that defendants sought to obtain through depositions, the court considered that said request was vast and overly broad and that it had not been tailored narrowly enough to obtain relevant information for purposes of the preliminary injunction hearing. Docket No. 51. Within six hours of the court's ordered being entered, defendants filed a "Motion in Compliance with D.E. #

---

[3] The documents that defendants wanted to obtain are listed in the Notices for the Taking of Depositions, the Preliminary Request for Production of Documents, the Schedules to the Notices for the Taking of Depositions, and the Subpoenas *Duces Tecum* that defendants attached as exhibits to their Motion for Expedited Discovery. Docket No. 28, Exhibits 4-12.

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 5

51 and to Expedite Discover". Docket No. 52. In said motion, defendants narrowed their discovery request by requesting leave to take the deposition of Mercado Salinas and the witnesses that plaintiffs intended to call at the preliminary injunction hearing. Defendants also requested that plaintiffs be ordered to produce only those documents that plaintiffs intended to use at the preliminary injunction hearing. Docket No. 52. On April 5, 2007, the court granted in part and denied in part defendants' request. In sum, defendants were granted leave to take Mercado Salinas' deposition which had to be " aimed solely at gathering information for purposes of the preliminary injunction". The court also ordered plaintiffs to provide defendants copies of all the documents that plaintiffs intended to use at the preliminary injunction hearing, if any. Docket No. 53.

On April 9, 2007, plaintiffs requested continuance *sine die* of the preliminary injunction hearing set for April 9, 2007, asserting that a conflict had developed regarding the scheduling of the deposition of Mercado Salinas that impeded the celebration of the preliminary injunction hearing on April 19, 2007. Furthermore, plaintiffs announced that they were also going to file a motion requesting leave to conduct limited expedited discovery focused on the issues that would arise during the preliminary injunction hearing. Finally, plaintiffs' counsel stated that "due to the complex nature of this case", recently joined new counsel "need[ed] additional time to familiarize themselves with the case, request limited preliminary expedited discovery and prepare for the preliminary injunction hearing." Docket No. 57. On April 11, 2007, defendants opposed the request for continuance of the preliminary injunction hearing. Docket No. 59. That same date, plaintiffs filed a reply to defendants' opposition to the request for continuance. Docket No. 61. On April 12, 2007, the court reset, once again, the preliminary injunction hearing for May 3, 2007. Docket No. 64. In light of the fact that the court had rescheduled said hearing several times, the court warned the parties that

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 6

no further continuances would be granted.  The court further indicated that plaintiffs' motion for expedited discovery had to be specific and narrowly tailored to the issues relevant to the preliminary injunction hearing and that it had to be filed on or before April 17, 2007, or else it would be denied as untimely.  Id.

On April 17, 2007, plaintiffs filed their motion requesting expedited discovery, which the court granted on April 19, 2007.  Docket Nos. 66, 68.  Defendants, on the other hand, requested an extension of time until April 23, 2007, to file their opposition to the motion requesting preliminary injunction, which the court also granted on April 19, 2007.  Docket Nos. 65, 67.

The conflicts and/or disputes regarding the scheduling of Mercado Salinas' deposition continued.  On April 22, 2007, defendants filed an "Emergency Motion Requesting Order Regarding Plaintiff Walter Mercado's Deposition."  Docket No. 72.  Defendants claimed that although they had diligently attempted to schedule the deposition of Mercado Salinas, such attempts had proven unsuccessful because plaintiffs had changed the deposition dates several times and offered alternative dates and places solely to accommodate plaintiffs' schedule.  Thus, defendants requested an order from the court setting Mercado Salinas' deposition for April 25, 2007.  The next day, April 23, 2007, plaintiffs filed an opposition to the emergency motion filed by defendants, and defendants replied.  Docket Nos.73, 75.  The court ordered that if co-defendant Guillermo Bakula was made available to be deposed on April 26, 2007, then Mercado Salinas' deposition had to be conducted on April, 25, 2007; otherwise, if Bakula remained unavailable during the week of April 23 through April 27, 2007, then Mercado Salinas' deposition had to be conducted on April 30, 2007, and Bakula's deposition on May 1, 2007.  Docket No. 77.

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 7

On April 23, 2007, plaintiffs' filed an "Amended Motion for Preliminary Injunction", asserting that after further review of the original request for preliminary injunction hearing, "it would appear that some of the relief requested by [p]laintiffs may be amenable to remedies at law". Docket No. 74. Thus, the amended request for preliminary injunction was streamlined to attend those issues for which plaintiffs' claimed there was no legal remedy. Docket No. 74. On that date, defendants also filed an opposition to the motion requesting preliminary injunction. Docket No. 84.

On April 25, 2007, defendants requested that the court amend its order dated April 19, 2007, granting the expedited discovery requested by plaintiffs, arguing that the discovery that the court had granted plaintiffs was significantly more onerous and broad than the discovery granted to defendants. Docket No. 89. On April 25, 2007, defendants also requested an order from the court allowing them to extend the time, within reasonable limits, for the deposition of Mercado-Salinas beyond the seven hours limit set forth by Fed.R.Civ.P. 30(d)(2), because Mercado Salinas was going to require the use of an interpreter during the deposition, essentially doubling the time needed to conduct the deposition. Docket No. 90. The court granted this request the same date. Docket No. 91. On April 27, 2007, the court amended its April 19, 2007, order granting plaintiffs expedited discovery. Pursuant to the amended order, defendants were ordered to produce to plaintiffs only copies of those documents that the defendants intended to offer or introduce as exhibits during the preliminary injunction hearing, and copies of all contracts entered into or signed by the defendants dealing with Mercado Salinas from November, 2006, to the present. Docket No. 92.[4]

_____

[4] Defendants, however, were not required to produce copies of the contracts entered into before 2006, unless they intended to offer them in evidence during the preliminary injunction hearing. Docket No. 92.

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 8

A few minutes after the court's order was entered, also on April 27, 2007, at the eve of Mercado Salinas' deposition and shortly before the preliminary injunction hearing, plaintiffs filed a "Motion to Withdraw Amended Motion Requesting Preliminary Injunction." Docket No. 93. The one-paragraph motion to withdraw the preliminary injunction request reads as follows:

> On February 8, 2007, Plaintiffs filed a Motion Requesting Preliminary Injunction. Docket No. 3. On April 23, 2007, Plaintiffs filed an Amended Motion Requesting Preliminary Injunction. Docket No. 79. As this Court noted on its Order of February 9, 2007, Plaintiffs Motion may be premature under the terms of the contract. Docket No. 5. Furthermore, there is an issue as to whether under the circumstances Plaintiffs are entitled to injunctive relief. See Docket No. 84. Thus, Plaintiffs request that this Honorable Court withdraw Plaintiffs' Motion Requesting Preliminary Hearing without prejudice. Plaintiffs will revisit this issue in the future if necessary.

Docket No. 93 (emphasis added).  Thus, defendants based their sudden reversal of position as to the propriety of the injunctive relief requested on two grounds: (1) that their claims may be premature under the terms of the Agreement (which is exactly what the court stated nearly three months earlier in denying plaintiffs' TRO request); and (2) that it was unclear whether plaintiffs were entitled to the injunctive relief in the first place.  Id.

In light of plaintiffs' request, the court vacated the preliminary injunction hearing set for May 3, 2007, as well as all the orders regarding expedited discovery (Docket Nos. 53, 68, 92). Docket 94. The court, however, ordered the parties to submit memoranda as to whether plaintiffs should be assessed with costs, attorney's fees and expenses regarding the request for preliminary injunction on or before, May 7, 2007. Docket No. 94. Defendants filed a memorandum on May 7, 2007, while plaintiffs filed their response in opposition on May 22, 2007. Docket Nos. 101 and 105.

On May 16, 2007, the court ordered defendants to submit the verified statements. Docket No. 104. On May 23, 2007, defendants' counsel from the law firm of Geenberg Traurig, P.A., submitted verified statements in the amount of $131,255.94. Docket No. 107. On May 25, 2007,

defendants' counsel from the law firm of McConnel Valdés, submitted verified statements in the amount of $15,862.50.  Docket No. 109.

On June 5, 2007, defendants requested that plaintiffs' opposition be stricken from the record because it was filed fifteen days after the deadline to file the memoranda had expired.  In the alternative, defendants requested leave to reply to plaintiffs's response.  Docket No. 111.  The next day, plaintiffs filed a response to the previous request.  Docket No. 112.  Two days later, on June 8, 2007, plaintiffs filed another response to defendants' motions submitting the verified statements (Docket Nos. 107, 109).  Docket No. 113. Defendants replied on June 25, 2007.  Docket No. 115.

## II.   COURT'S AUTHORITY TO IMPOSE SANCTIONS UNDER FED.R.CIV.PROC. 11, 28 U.S.C.

Rule 11 provides, in relevant part, that:

> [b]y presenting to the Court ... a pleading, written motion or other paper, an attorney or other unrepresented party is certifying that to the best of the persons' knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b), 28 U.S.C.

Rule 11 serves the purpose of requiring attorneys to assume responsibility for the claims and defenses they represent to the Court.  Bermúdez v. 1World Productions, Inc., 209 F.R.D. 287, 289 (D.P.R. 2002); see also Cruz v. Savage, 896 F.2d 626, 630 (1st Cir.1990) ("The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses"); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990)

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 10

("It is now clear that the central purpose of Rule 11 is to deter baseless filings in the District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts").

To achieve these goals, Rule 11 imposes upon attorneys the obligation to "make a reasonable inquiry to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay." Bermúdez, 209 F.R.D. at 289 (quoting Cruz, 896 F.2d at 630).   Pursuant to Rule 11, attorneys are also under the "continuing obligation to ensure that the proceedings do not continue without reasonable basis in law and fact." Cruz, 896 F.2d at 630; see also Soler v. Puerto Rico Telephone Co., 230 F.Supp.2d 232, 238 (D.P.R. 2002) ("Thus, if an attorney insists 'upon a position after it is no longer tenable', he/she may be exposed to sanctions").

In determining whether a violation to Rule 11 has occurred, the court must employ "an objective standard of reasonableness under the circumstances." Cruz, 896 F.2d at 631.  Under Rule 11, subjective good faith is not enough to protect an attorney from sanctions. Id.  "In imposing sanctions under Rule 11 and measuring an attorney's conduct under this objective standard, courts should exercise caution.  Courts should avoid using the wisdom of hindsight and instead evaluate an attorney's conduct based upon what was reasonable at the time the attorney acted." Id.

### III.   PLAINTIFFS' FAILURE TO COMPLY WITH RULE 11 STANDARDS.

On February 7, 2007, plaintiffs requested a TRO and a preliminary injunction, based on the allegations of the complaint.  The next day, the court denied plaintiffs' request for a TRO, stating that it could not find at that moment that plaintiffs were likely to succeed on the merits of their claim, that they had not persuaded the court that the contract suffers from any condition which may render

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 11

it null and void, and that some of plaintiffs claims may be premature.  Docket No. 5.  Undaunted and despite the court's reasoning in denying the TRO, plaintiffs moved for reconsideration of said ruling, insisted in pursuing their preliminary injunction request, asked for various extensions of time to serve summons, filed motions in favor and against expedited discovery, brought to the court's attention issues regarding depositions, asked for a rescheduling of the preliminary injunction hearing and amended their motion for a preliminary injunction.

Time after time, plaintiffs reiterated in unequivocal terms the urgent nature of their request and the consequences of denying the same.  For instance, in requesting reconsideration of the denial of the TRO, plaintiffs' claimed that they were entitled to injunctive relief "without written or oral notice to [d]efendant" and that "immediate and irreparable damage, injury and loss will definitively result and continue to befall upon the [p]laintiffs, before [d]efendants or their attorneys move in opposition."  Docket No. 9, page 16.

In opposing defendants' request to conduct expedited discovery, plaintiffs emphatically stated that they had "clearly alleged why the preliminary injunction should be granted", that "[d]efendants' request to produce documents [was] simply an attempt to stonewall, intimidate and ultimately avoid the injunction hearing", that "[d]efendants' discovery [was] unnecessary for purposes of the upcoming hearing", and that,  in any event, "plaintiffs [were] the ones entitled to limited expedited discovery as they have the burden in a preliminary injunction hearing".  Docket No. 38, pages 2-5.

Moreover, over two months after the complaint and request for injunctive relief were filed, plaintiffs requested for the first time expedited discovery.  Docket No. 57.  Despite the untimeliness of this request, the court allowed plaintiffs to conduct limited expedited discovery and continued the preliminary hearing in order to afford the parties a reasonable opportunity to adequately prepare for

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 12

the hearing.  Docket No. 64.  Expedited discovery often entails additional expenses such as the involvement of more attorneys, expedited transcripts, overtime, and short-notice travel arrangements. Nevertheless, plaintiffs claimed that the expedited discovery was of "primary importance" for their preliminary injunction request.  Docket No. 57, at page 2.[5]

Under these circumstances, on April 27, 2007, plaintiffs filed a motion to withdraw their request for preliminary injunction.  Docket No. 73.  This motion was one business day prior to Mr. Mercado's deposition, two business days before Mr. Bakula's deposition, and only two additional working days prior to the preliminary injunction hearing.  In doing so, plaintiffs conceded that their request "may be premature under the terms of the contract" and that there was "an issue as to whether under the circumstances [p]laintiffs [were] entitled to injunctive relief."  Id.

Plaintiffs' conduct throughout their pursuit for injunctive relief fails to meet the requirements imposed under Rule 11.  Since plaintiffs requested the TRO and the preliminary injunction at the beginning of this case, plaintiffs continuously and repeatedly insisted and represented to the court that they were entitled to such extraordinary relief.  As a result of said representations, during the weeks leading to the preliminary injunction hearing, the court and the parties devoted a non-trivial amount of time and resources in addressing issues directly related to said hearing.  Plaintiffs filed and prosecuted a concededly groundless motion requesting injunctive relief, only to withdraw it at the last minute for the same reasons stated by the court almost three months earlier when it denied plaintiffs' request for a TRO.  This conduct justifies the imposition of costs, expenses and attorney's fees incurred by defendants in preparation for the preliminary injunction hearing.

---

[5] Although certainly part of the expedited discovery requests were initiated by the defendants, the expenses related to the same could have been avoided had plaintiffs not insisted in their request for a preliminary injunction.

<u>Mercado-Salinas, et al., v. Bart Enterprises, et al.</u>
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 13

Plaintiffs' argument that they had a good faith belief that while the Agreement provided that they were not entitled to injunctive relief, they could pursue this course of action because the Agreement is null and void, is not of great help. Docket No. 105, pages 4, 6-7. The Agreement clearly states that: "[s]ubject to the terms of this agreement, all grants granted or assigned by this agreement shall be irrevocable under all or any circumstances, and shall not be subject to rescission, termination or injunction." Docket No. 1, Exhibit 2, § 1, ¶ 13. In denying the TRO request, the court stated that plaintiffs had not persuaded the court that said Agreement suffered from any condition which may render it null and void. In light of the clear language of both the Agreement and the court's order denying the TRO, plaintiffs' counsel's subjective good faith in believing that the Agreement is null and void is insufficient to protect them from sanctions under Rule 11. <u>Cruz</u>, 896 F.2d at 631. Plaintiffs' counsel's insistence upon their claim of entitlement to injunctive relief violates the "continuing obligation to ensure that the proceedings do not continue without reasonable basis in law and fact" imposed upon them by Rule 11. <u>Id.</u>, at 630; <u>Soler</u>, 230 F.Supp.2d at 238.

Considering the totality of the facts and circumstances of this case, the court determines that plaintiffs' attorneys unjustifiably insisted in their request for a preliminary injunction without promptly evaluating whether their claims were warranted by existing law or by a non-frivolous argument, needlessly increasing the cost of litigation. Therefore, sanctions shall be imposed to deter this conduct from becoming a recurrent practice in this forum.

## IV.   SANCTION IMPOSED.

Having found that sanctions are warranted, the court must now evaluate the type and amount of sanctions to be imposed upon plaintiffs' counsel. Defendants request attorney's fees, costs and expenses in the combined amount of $147,118.44; attorneys from the law firm of Greenberg Traurig,

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 14

P.A claim $131,255.94 and attorneys from the law fir of McConell Valdes claim $15,862.50.

Docket Nos. 107, 109.

Rule 11(c)(2) provides in part that:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, <u>an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.</u>

Fed.R.Civ.P. 11(c)(2), 28 U.S.C. (emphasis added).   Under Rule 11, sanctions come in a wide variety of forms, and the district court's discretion in crafting the appropriate sanction is broad.  This is so because the trial judge is best positioned to decide what sanction best fits a particular case or best responds to a particular episode or pattern of errant conduct.

The appropriateness of a particular sanction is primarily a function of two variables: the facts presented and the court's purpose in penalizing the errant party. Sanctions, under both Rules 11 and 37, serve dual purposes of deterrence and compensation. As a deterrent, sanctions speak largely to systemic concerns. Courts cannot function smoothly if parties, and counsel, ignore the rules, overlook due dates, or flout court orders. In this sense, sanctions may be a useful tool in vindicating the court's authority, reminding those who need reminding of the protocol, and ensuring orderliness in the judicial process. As compensation, sanctions recognize that a litigant's failure to abide court orders and rules, or his disregard of obligations inherent in the conduct of litigation, harm not only the system but the other participants in the process. Sanctions, then, can have a contrapuntal effect, adjusting the scales so that the extra time, effort, and expense to party "A" which occurs in consequence of the dereliction of party "B" can be repaid in some equitable fashion.

<u>Anderson v. Beatrice Foods Co.</u>, 900 F.2d 388, 394-95 (1st Cir. 1990) (internal citations omitted). In light of the above, the court has the authority and discretion to sanction plaintiffs' counsel with an order directing payment to defendants' counsel for attorney's fees, costs and expenses reasonably incurred as a direct result of the preliminary injunction request.   The court determines that

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 15

sanctioning plaintiffs' counsel with such an order in this case is warranted to effectively deter a conduct similar to the one demonstrated by plaintiffs' counsel in their pursuit of injunctive relief.

The amount of reasonable attorney's fees for purposes of Rule 11 sanctions may be determined by multiplying the number of hours productively expended by counsel times a reasonable hourly rate. See, e. g., Kirschner v. Zoning Bd. of Appeals of Valley Stream, 159 F.R.D. 391, 395-96 (E.D.N .Y.1995); View Engineering, Inc. V. Robotic Vision Systems, Inc., 208 F.3d 981, 987, n.7 (Fed. Cir. 2000); see also Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 16(D)(5)(b) (3d ed. 2000). A court usually should begin with the attorneys' contemporaneous billing records. Kirshner, 159 F.R.D. at 397; see also Gay Officers Action League v. Commonwealth of Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001). The court should then substract hours that are duplicative, unproductive or excessive and multiply the reasonable hours billed by the prevailing attorney rate in the community. Id.; see also Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). Once established, this amount represents a presumptively reasonable fee, although it is subject to upward or downward adjustments in certain circumstances. Id., at 937. The court may adjust the award for several reasons, such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir.1974); see also Hensley v. Exkerhart, 461 U.S.424, 434 n. 9, Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 n. 3 (1st

Cir.1997).

### A.   Hourly rate.

The court first determines the appropriate hourly rate for the attorneys representing defendants in relation to the preliminary injunction.  "The hourly rate should be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Tejada-Batista v. Fuentes-Agostini, 263 F.Supp.2d 321, 327 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). "In reaching its determination, the court may rely upon its own knowledge of attorneys' fees in the community." Rodriguez v. International College of Business and Technology, Inc., 356 F.Supp.2d 92, 96 (D.P.R. 2005) (citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989)).

Courts may award different rates depending on whether the time was invested in court or out of court. See Ciudadana v. Gracia-Morales, 359 F.Supp.2d 38, 45 (D.P.R. 2005) (finding rates of $200.00 an hour for out-of-court work and $225 an hour for in-court work justified); Rodriguez, 356 F.Supp.2d at 96-97 (finding rate of $190 and $125 to be appropriate); Top Entertainment Corp. v. Torrejon, 349 F.Supp.2d 248, 253-255 (D.P.R. 2004) (finding hourly rate of $125 reasonable); Anywhere, Inc. v. Romero, 344 F.Supp.2d 345, 348 (D.P.R. 2004) (finding rate of $250 to be appropriate); Vieques Conservation and Historical Trust, Inc. v. Martinez, 313 F.Supp.2d 40, 47 (D.P.R. 2004) (reducing attorney's hourly rate to $225 to equate with local rates); Sepulveda-Carrero v. Rullan, 2005 WL 1949775, at *2 (D.P.R.) (finding an hourly rate of $115 to $100 for in-court time and $90 for out-of-court time reasonable in light of the prevailing rates in the community); Zayas v. Commonwealth of Puerto Rico, 451 F.Supp.2d 310,319 (D.P.R. 2006) (setting paralegal rate at $50).

<u>Mercado-Salinas, et al., v. Bart Enterprises, et al.</u>
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 17

Defendants in this case are being represented by attorneys Jesus E. Cuza, Ina M. Berlingery-Vincenty ("Berlingery"), Marlene Silverman ("Silverman") and Jessica Carvalho Morris ("Morris") (the last two appear *pro hac vice*), from the law firm of Greenberg Traurig, P.A., and Attys. Arturo J. García-Solá ("García Solá") and Roberto C. Quiñones-Rivera ("Quiñones"), from the law firm of McConnell Valdes.   In order to receive the proper award of attorney's fees, the party requesting or entitled to such award must submit with its motion evidence to support the number of hours and rates sought.   <u>Hensley</u>, 416 U.S. 424, 433 (1983). Although attorneys Berlingery and Quiñones do not state in their declarations under penalty of perjury, submitted together with the time sheets detailing the work performed by the attorneys of the law firms of Greenberg Traurig, P.A. and McConnell Valdes,  what is their hourly rate and what is the hourly rate of the other attorneys and/or employees whose work is included in the time sheets, said rates can be estimated by dividing the amount charged by each attorney in any single time entry by the number of hours that said attorney employed in performing the task(s) described in the entry.   This arithmetic exercise yields the following implicit hourly rates for these attorneys: (1) Ina M. Berlingery-Vincenty, Esq.: $365 per hour; (2) Marlene K. Silverman, Esq.: $515 per hour;  (3) Jessica Carvalho Morris, Esq.: $290 per hour; and (4) Daniel S. Coriat; $260 per hour.[6]  Similarly, from the time-sheets provided by the attorneys of McConnell Valdes, the hourly rates for said attorneys can be calculated as follows: (1) Arturo García-Solá, Esq.: $300; and (2) Roberto Quiñones-Rivera, Esq.: $255 per hour.

Defendants' counsel have failed to present any evidence regarding the preparation, educational background, experience and/or skills, position and seniority within the respective law

---

[6] In the time sheets provided by the attorneys from the law firm of Grenberg Traurig, P.A., there is one entry made by Daniel S. Coriat for work he made regarding the preliminary injunction request.  Said time sheets, however, do not contain any billing entry regarding work performed by attorney Jesus E. Cuza.  Docket No. 107.

firms of said attorneys or employees.  Docket Nos. 107, 109.   Additionally, defendants' counsel

from both law firms fail to provide any evidence pertaining to the prevailing rate in the community.

Id.; Bordanaro v. McLeod, 871 F.2d 1151, 1168 (1st Cir.1989); Top Entertainment Corp., 349

F.Supp.2d at 254 (party seeking attorney fees is required to present evidence other than the attorney's

own affidavits regarding the prevailing hourly rate).  Insofar defendants' counsel fail to carry their

burden of providing such evidence, the court will thus rely upon its own knowledge of attorney's

fees in the community of Puerto Rico.  Consequently, the court will set their hourly rates close to the

lower end of the prevailing rate in the local community; the hourly rate for all attorneys and/or

employees will be set at $115 per hour.  See Zayas, 451 F.Supp.2d at 316 (the court set at $110 the

hourly rate of attorneys that were identified in the time sheets by their initials only; the court did not

know who these attorneys were, and they provided no evidence of their preparation, educational

background, experience and skills); see also Top Entertainment Corp., 349 F.Supp.2d at 254-55

(finding hourly rate of $125 reasonable); Sepulveda-Carrero, 2005 WL 1949775, at *2 (finding an

hourly rate of $90 for out-of-court time reasonable in light of the prevailing rates in the community).

**B.      Award of attorney's fees, costs and expenses to attorneys from the law firm of
Greenberg Traurig, P.A.**

According to the time sheets submitted by defendants' attorneys from the law firm of

Greenberg Traurig, P.A., they spent a total of 351.4 hours of work in relation to the preliminary

injunction.  Upon review of the time sheets, the court notes the same include time spent in work that

is not directly related to the preliminary injunction hearing.  In particular, the court determines that

the following entries must be either eliminated or adjusted due to lack of specificity or relevance to

the issues presented by the request for preliminary injunction, duplicity or redundancy:

1)      1st entry of Atty. Silverman on 02/26/07 (1.8 hours);

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 19

2)      1st entry of Atty. Berlingery on 03/09/07 (8.0 hours);

3)      1st entry of Atty. Berlingery on 03/13/07 (6.0 hours).  The court will deduct 3.0 hours
        because Atty. Berlingery included time spent working on issues regarding the
        proceedings of a related case pending before the Southern District Court of Florida,
        which are not directly relevant to the preliminary injunction request.

4)      1st entry of Atty. Silverman on 03/14/07 (5.4 hours);

5)      1st entry of Atty. Silverman on 03/15/07 (0.9 hour);

6)      1st entry of Atty. Berlingery on 03/16/07 (8.0 hours);

7)      1st entry of Atty. Silverman on 04/02/07 (0.2 hour);

8)      1st entry of Atty. Silverman on 04/03/07 (1.6 hours);

9)      1st entry of Atty. Silverman on 04/04/07 (4.5 hours);

10)     1st entry of Atty. Silverman on 04/06/07 (0.8 hour);

11)     1st entry of Atty. Morris on 04/10/07 (7.2 hours);

12)     1st entry of Atty. Morris on 04/12/07 (8.1 hours);

13)     1st entry of Atty. Morris on 04/13/07 (3.1 hours); and

14)     1st entry of Atty. Silverman on 04/20/07 (1.6 hours).

Thus, the court will deduct 54.2 hours from the 351.4 hours that the attorneys from
Greenberg Traurig, P.A. spent on work related to the preliminary injunction request.  Thus, the
adjusted tally is 297.2 billable hours.  At a rate of $115 per hour, the final calculation of attorney's
fees for the work performed by said attorneys yields $34,178.00.

Finally, according to the time sheets provided by defendants' counsel from the law firm of
Greenberg Traurig, P.A., the costs and expenses related to the preliminary injunction amount to
$4,174.00.  Docket 107.  Of the $4,174.00 claimed, $3,812.26 belong to research costs and the

remaining belong to other costs and expenses, such as FedEx charges, photocopies, telephone expenses and messenger services. Id. Because some of the research seems to have been employed in matters not directly related to the preliminary injunction hearing, the research amount should be reduced to $2,800.00. Taking into account the adjustment for research, the amount claimed for costs and expenses is reasonable. Defendants' attorneys from the law firm of Greenberg Traurig, P.A. are therefore entitled to $3,161.74 of costs and expenses incurred as a result of the preliminary injunction. Thus, the computation of the final amount of attorney's fees, costs and expenses awarded to defendant's attorneys from the law firm of Greenberg Traurig, P.A, is **$37,339.74**.

### C.    Award of attorney's fees, costs and expenses to attorneys from the law firm of McConnell Valdes.

According to the time sheets submitted by defendants' attorneys from the law firm of McConnell Valdes, they spent a total of 89.5 hours of work in relation to the preliminary injunction. Upon review of said time sheets, the court notes that some of the entries must be either eliminated or adjusted due to lack of specificity or relevance to the issues at hand, duplicity or redundancy:

1)    1st entry of Rosa Jiménez on 03/15/07 (1.0 hour);

2)    1st entry of Frank La Fontaine-Maestre on 03/16/07 (1.25 hours);

3)    1st entry of Frank La Fontaine-Maestre on 03/20/07 (0.25 hour);

4)    1st entry of Frank La Fontaine-Maestre on 03/23/07 (0.25 hour);

5)    1st entry of Frank La Fontaine-Maestre on 04/02/07 (0.75 hour);

6)    1st entry of Frank La Fontaine-Maestre on 04/04/07 (0.25 hour);

7)    1st entry of Frank La Fontaine-Maestre on 04/10/07 (0.5 hour);

8)    1st entry of Frank La Fontaine-Maestre on 04/11/07 (0.5 hour);

9)    1st entry of Rosa Jiménez on 04/11/07 (1.0 hour);

Mercado-Salinas, et al., v. Bart Enterprises, et al.
Civil No. 07-1113 (FAB/MEL)
Opinion and Order
Page No. 21

10)    1st entry of Atty. Quiñones on 04/23/07 (3.5 hours).  The court will deduct 2.5 hours because only part of the entry directly specifies matters regarding the preliminary injunction.

11)    1st entry of Atty. García on 04/23/07 (1.0 hour);

13)    1st entry of Javier García on 04/25/07 (3.0 hours);

14)    1st and 2nd entries of Javier García on 04/26/07 (9.0 and 0.5 hours, respectively);

15)    1st entry of Atty. García on 04/26/07 (0.50 hour); and

16)    1st entry of Javier García on 04/27/07 (4.5 hours).

Thus, the court will deduct 25.25 hours from the 89.5 billable hours that the attorneys from McConnell Valdes spent on work related to the preliminary injunction request.  Thus, the final tally is 64.25 hours.  At an hourly rate of $115, the final calculation of attorney's fees for the work performed by said attorneys yields **$7,388.75.**[7]

**D.    Total award of attorney's fees, costs and expenses to defendants' counsel.**

In light of the above, the computation of the final amount of attorney's fees, costs and expenses awarded to defendants' counsel is **$44,728.49**.  As stated before, this amount represents a presumptively reasonable fee that may be subject to upward or downward adjustments in certain circumstances.  Lipsett, 975 F.2d 934, 937 (1st Cir.1992); Johnson, 488 F.2d at 717-719; Hensley, 461 U.S. at 434 n. 9, Coutin, 124 F.3d at 337 n. 3.  Both law firms, however, have failed to present evidence of any special circumstances or consideration that warrant such a departure.  In particular, no evidence or arguments have been presented as to: (1) whether they were precluded from taking

---

[7] McConnell Valdes has not presented evidence of costs and expenses in connection with the preliminary injunction request.

other cases as a result of their acceptance of this case; (2) the nature and length of their professional relationship with defendants; (3) their educational background, experience and/or skills, ability, reputation, positions and seniority within their respective law firms; (4) the novelty and difficulty of the questions presented by the preliminary injunction request, if any; and (5) the size of awards in similar cases.  See Johnson, 488 F.2d at 717-719; see also Hensley, 461 U.S. at 434, n. 9; Coutin., 124 F.3d at 337, n. 3.  Therefore, in light of defendants' counsel's failure to provide said evidence, the court will not adjust this amount either downward or upward.  Furthermore, the court understands that the amount awarded to defendants' counsel encourages attorneys to conduct, before requesting injunctive relief, a reasonable inquiry as to the legal and factual basis of the claims made in support of such extraordinary relief while, at the same time discouraging attorneys from engaging in the future in a conduct similar to that exhibited by plaintiffs' counsel with respect to the request for a preliminary injunction.

**IV.    CONCLUSION.**

For all the reasons set forth above, sanctions are imposed upon plaintiffs' counsel in the amount of **$44,728.49** in attorney's fees, costs and expenses.  In particular, defendants' counsel from the law firm of Greenberg Traurig, P.A. are awarded the **$37,339.74** in attorney's fees, costs and expenses; attorney's fees are awarded to defendant's counsel from the law firm of McConnell Valdes for the remaining **$7,388.75.**

IT IS SO ORDERED.

San Juan, Puerto Rico, this 24th day of September, 2007.

s/Marcos E. López
UNITED STATES MAGISTRATE JUDGE